Davis et al v. Whittaker et al.

DAVIS ET AL v. WHITTAKER ET AL.

1. PRACTICE: *Appearance; What the record should show.*
When there has been service on the defendant, the record should show it. Where there has been none, it should show an appearance; and where there are several defendants, it is not sufficient that the record state that the "defendants" appeared. Such a term applies only to those who, by service or appearance, have already been made parties, and does not include all who have been named in the complaint.

2. WILLS: *Ademption, by gifts in life of testator.*
The application of the doctrine of *ademption*, by gifts during life, is confined to specific legacies; or to general legacies of definite amounts in money, or something of the same nature. It is not applied to t e bequest of a residue or part of a residue.

3. WILLS: *Construction of*
(For the construction in this case, see the opinion. The w ll is construed as a whole, and is too long to be formulated into a syllabus.—REP.)

APPEAL from *Phillips* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.

*W. W. Smith and Tappan & Hornor*, for appellants:

Davis was not in possession of the land, nor under any obligation to pay taxes at the time of the tax-sales. He was

a mortgagee, and eventually acquired the equity of redemption by fair purchase. *Sec.* 5234 *Gantt's Digest* does not affect the validity of the tax-sale, it only lets in the remainderman to redeem.

Mrs. W.'s remedy was by ejectment. *Gantt's Digest,* *secs.* 2259–60–62; 27 *Ark.*, 157; 26 *Id.*, 647. Partition did not lie. The lands were held adversely, and the title was in dispute. *Story Eq. Jur.*, *sec.* 650, *note; Freem. Cot. and Part.*, *sec.* 446; 27 *Ark.*, 77. Common law courts are competent to construe wills.

Argued on the construction of the will; Mrs. R. was invested with an unlimited power of disposal, and many cases hold that such a power carries the fee. See *Attorney General* v. *Hall, Fitzgibbon* 114; *S. C.* 8 *Viner*, 102; 10 *Johns.*, 19; 13 *Id.*, 356; 21 *M'e.* 288; 21 *Pick.*, 416; 41 *Conn.*, 607; 2 *Barb.*, 537; 17 *Id.*, 533; 15 *John.*, 169; 22 *Wend.*, 137; *McDonald* v. *Walgrove, Sandf. Chy.*, 174; 25 *Mich.*, 461; 68 *M'e.*, 34; 5 *Mass.*, 500; 100 *Id.*, 343, 468; 47 *Iowa*, 607; 18 *Ala.*, 132; 48 *Penn. St.*, 466; 12 *Gray,* 376; 27 *Cal.*, 439. If she took the fee, there could be no remainder to Mrs. W. *Sandford Chy.*, 274, *sup.* Nor can it be supported as an executory devise, because liable to be defeated by the act of the first taker. 3 *Ark.*, 147; 23 *Id.*, 356.

Another construction: Mrs. R. took estate for life, or widowhood, with power to defeat remainder by consuming the *corpus* of the entire estate, in payment of the testator's debts, education, maintenance, etc., of his family; in case not so consumed, then with power to appoint remainder amongst children, with remainder over to children, if the power of appointment not exercised. *McGavock* v. *Pugsly, Cooper Tenn. Chy.*, 410; *Cockrill* v. *Many*, 2 *Id.*, 49; 10 *Hum ,* 588; 1 *Swan*, 185; 5 *Cold.*, 229; 5 *Madd. Chy.* 123; 52 *N. H.*, 267; 125 *Mass.*, 453. Under this view Davis

acquired Mrs. R.'s life interest under execution sales, and the remainder by conveyances from the children.

On twelfth clause of will see *Blatchford* v. *Newberry*, *Sup. Ct. Ill., June,* 1878, *Cent. L. J., vol.* 7, 172; also, 3 *Littell,* 415; 7 *B. Mon.,* 13; 15 *Id.,* 808; 17 *Id.,* 735. Mrs. R. could, under ninth clause, prefer some of the children and exclude others. 18 *Gratt,* 541; 3 *Wall, Jr.,* 32.

Mrs. R. certainly had a life estate, and to hold that the remainder was accelerated by any act of hers, is to do violence to the plain intention of the testator. 23 *Ark.,* 89; 31 *Id.,* 145.

The legacy to Mrs. W. was adeemed by subsequent provision. *Story Eq. Jur., secs.* 1111 *to* 1117; 2 *Lead. Cas. in Eq.* [*315 *to* *333]; 2 *Redf. on Wills,* 440 *to* 443; 5 *My. & Cr.,* 29; 7 *H. of L. Cas.,*728; 3 *Conn.,* 31; 15 *Pick.,* 133; 5 *Randolph,* 577; 3 *Stockton Chy.,* 158.

Mrs. Sarah E. Whittaker's children fail to show that the contingency upon which they were to take has happened.

*John C. Palmer,* for appellees:

1. Mrs. Rabb permitted the land to be sold for taxes, and failing to redeem, under *Sec.* 142, *Act March* 25, 1871, her life interest became forfeited to the remainderman.

2. At the time of the tax-sales Davis had such an interest that he could not acquire a tax-title. Mrs. Rabb was only a trustee of a specific trust, and could not encumber the property for her private purposes, nor was it subject to her private debts. 31 *Ark.,* 580.

3. The evidence and surrounding circumstances show that the gift to appellees was not intended as an ademption. The doctrine of ademption only applies to *specific,* and not residuary legacies. *Moggridge* v. *Thackerell,* 1 *Ves. J.,* 473; *S. C.,* 3 *Bro. C. C.,* 517; *aff'd.* 13 *Ves.,* 416; 3 *Atk.,* 183; 2 *Atk.,* 215.

EAKIN, J.   John Rabb died in 1856, leaving a will which had been executed in 1854.   This suit is brought by his daughter, A. Cecilia Whitaker and her husband, against his widow, who is also executrix; the other children, and persons who hold portions of the property, claiming ownership.

2. PRAC-
TICE:
What the
record
should
show. as to
appear-
ance of de-
fendants.

J. Cole Davis, one of the purchasers and claimants of the property, is the only one who made active defense, or who is clearly shown to have made an appearance.   There are several entries of record showing that "the defendants" came by solicitor, etc., etc., but it also appears that this term is used in many cases where the motion or proceeding was by Davis alone.   There was no summons, actual or constructive, and we might well hold that there is a fatal defect of parties, but that the attorneys make no point of this; and there are, in the case, indirect indications that all essential parties are cognizant of the proceedings and prepared to abide the result.   Such concessions, however, on the part of this court, to carelessness in entries, have already gone too far, and cannot be safely continued.   At present, while proceeding to dispose of this case, we remark that it is of the greatest importance that the record of every case should show clearly, and beyond doubt, for all future time, who were parties and bound by the proceedings.   Where there has been service the record should show it.   Where there has been none, it should show an appearance; and where there are several defendants it does not suffice to say that "the defendants" appeared.   Such a term applies only to those who have already, by service or appearance, been made parties, and does not include all who are named in the bill or complaint.   It is better to name the parties defendant, who come by attorney, at least once, after which the term "defendants" in subsequent entries may include them.

The object of this suit is to obtain a construction of the will; to have the rights of the complainant under it defined; and, if she be entitled to such relief, to have a partition, with a receiver as to the lands adversely held by the purchasers. Such suits, with regard to the administration of trusts, are within the ordinary jurisdiction of courts of equity. They are commonly entertained at the suit of the executor or trustee seeking the advice, aid and protection of the court in the execution of the trust, but may be brought by any one claiming an interest in the fund, or the execution of powers.

*In limine*, the complainant was met by a motion to dismiss, based upon *sections* 2267 *and* 8, *Gantt's Digest*, setting forth that defendant, Davis, had purchased the lands to which the motion applied at a tax-sale, and had made valuable improvements upon them, and near them, for their benefit; and that before beginning this suit the complainants had not filed an affidavit in the clerk's office showing that they had tendered the purchaser the full amount of said taxes with costs, with interest thereon at the rate of one hundred per cent. upon the amount first paid therefor, and twenty-five per cent. upon all costs and taxes paid on said lands thereafter.

In opposition to the motion it was shown that the purchase was made by agreement with a number of the devisees under the will, the land to be held subject to redemption by the owners. The motion was properly overruled.

Although the complainant was not a party to the agreement, she was entitled to share in all the advantages with regard thereto which inured to her co-devisees, or those claiming to be such. The lands were clothed with a trust, to which the Statute, above cited, has no application.

The Statute in question has been held constitutional by this court in *Craig* v. *Flanigan*, 21 *Ark.*, 319; *Pope et al*

v. *Macon et al*, 23 *Ib.*, 644; and *Haney* v. *Cole et al*, 28 *Ark.*, 299. These seem to be cases where the sales were proper, or only irregular, and where the purchasers could not be affected with a trust. It does not follow that the Statute, although constitutional in some respects, may not have unconstitutional applications, to be considered when they properly arise.

The provisions of the will requiring consideration are as follows:

1.   He appoints his wife, Harriet Ann, executrix, "under the restrictions, limitations, and provisions hereinafter written."

2.   He makes her the guardian of his four sons, John N., Henry C., James W., and Daniel F., and of his daughter, Pete Ann, during their minority, in case she should live and continue unmarried. If not, he directs that the guardianship be conferred upon his brother, to continue until they reach the age of twenty-one years, or, as to the daughter, until she may marry. Further, he enjoins that each of his said children shall receive the best education that the circumstances of his estate will justify, to be paid out of the estate, "as hereinafter to be provided."

3.   He bequeaths and devises to his said executrix, all his property, of every kind, real, personal and mixed;" to be, by her, retained, or disposed of "as she may deem most expedient for the payment of my debts, education of my children, and for the support and maintenance of my said wife and my *said* children." She was authorized to sell or dispose of the property, or any portion of it, "as she may think best for the interest and welfare of my said estate." By the 4th clause, the same authority was expressly given with regard to lands; and by the 5th, a general authority was conferred to compromise, renew and collect debts, and

Davis et al v. Whittaker et al.

to do any act with regard to the assets, which the testator might do, if living.

6. He directs that all his estate, not disposed of by virtue of the authority above given, shall go, after her death or marriage, to be equally divided between the children above named, and his daughter, Adeline Cecilia, (complainant) "subject to the contingencies hereinafter specified."

7. He provides that the bequests, devises and powers of guardianship conferred upon his wife, shall be dependent upon her continuing unmarried, and shall be forfeited by marriage. In which event he confers upon his brother "the same power as executor and guardian, which I have, hereinbefore, conferred upon my said wife."

8. He makes an alternative provision for his wife, in case of her marriage; and directs that the residue of his estate shall pass, *instanter*, to the four sons and two daughters, above named; or to their guardian for them, "under the law and express provisions of this my will."

9. He empowers his wife, if she may so desire, after payment of his debts, to give either of said children such portion of the estate " as she may deem such child entitled to;" and in doing that, if she should not deem it advisable that any or either of said children should receive control of his or her *portion*, he directs that she invest "the portion of such child" in such way that she or her husband shall receive only the "use, income, or produce of the same." By the 10th clause, she is relieved from the necessity of giving bond.

11. He recites that another daughter, Sarah Elizabeth Whitaker, has already received a portion in property, valued at $8000. He gives her one dollar, and provides that each of the four sons and two daughters, shall receive a like amount, before Sarah shall participate. The surplus to be equally divided amongst all seven.

55–38

12.   He provides that when the property "herein devised to my said daughters" shall be given to them by the person then having control of the estate, it shall be so placed as not to be wasted by the husbands, or taken for their debts. He expressly declares it to be his intention to give to his said daughters, "for their exclusive use, support and maintenance, so long as they may live, and then to vest in the heirs of their bodies;" and should either of them die without heirs of their bodies, her interest is to vest in the survivor or survivors of his children, their heirs, "as hereinbefore provided, in equal shares."

13.   He reiterates the desire that in case of his widow's marriage, his brother shall become executor and guardian; and in that event, gives to him "all the power and authority hereunder conferred upon my wife as executrix." The 14th and 15th clauses are either reiterations, or unimportant in this controversy.

One of the sons, John N., died after the father, intestate, and without issue. The property left on hand, at the time of the suit, consisted of two plantations, the "Front" and "Back" Rabb plantations. The widow, Harriet Ann, is still alive and unmarried. Sarah Elizabeth died during the suit, and her two children have, on their application, been made parties complainant, to claim any benefit which may be accorded them under the construction of the will.

The defendant, Davis, claims title to the "Back" Rabb place, and a small interest in the "Front" place, in various ways. He sets up in his answer several purchases under executions against the widow, in her individual capacity, and also a purchase under a trust deed, executed by her; also, the purchase under the tax-sale, made the subject of his motion; and purchase of the remainder interest from four of the children, (not including the complainant), to whom the widow had previously executed a deed. He insists that

this last mentioned deed was made by Mrs. Rabb, in execution of the power conferred upon her to give off such portions as she might deem advisable, to any of the children,. and that it divests complainant of all claim to the particular land. He sets up, also, a gift of nine slaves, made to complainant by her father, in his lifetime, after the execution of the will, and the use of a tract of land in Mississippi, allowed. to her and her husband, which, it is claimed, effected an ademption of the legacy.

Depositions were taken touching the ademption, and upon the hearing the Chancellor decreed upon the construction of the will that Harriet Rabb was appointed executrix with certain powers, to be exercised for the benefit of herself and the children of the testator, "named in said will," as well as for the protection of the estate confided to her ; that she was entitled to an interest in the property of her testator for her support and maintenance in common with *the six children exclusive* of *Sarah E. Whittaker*, for a certain specified period, not yet expired, and that there could be no partition at the present time. The portion of the bill praying relief was dismissed, and it was ordered that the costs be paid out of the estate. Both parties appealed.

It will be observed that this construction of the will is only partial, and does not specifically define the rights of complainant, except as they may be inferred. It should have fixed her rights under the instrument, for the guidance of herself, the executrix, and all others entitled to benefits.. Besides, it is not strictly accurate, as she was not included in the provision for education and maintenance during the widow's possession.

A review of all the provisions of the will discloses a careful solicitude on the part of the testator to protect, care for, and educate the children, and not only furnish them with portions to the extent of his estate, but to so secure, at least.

to the daughters, the continued enjoyment of them through life, that they could not be squandered by their husbands. Although great confidence is reposed in the wife, unless she should marry again, the children throughout are the principal objects of the testator's bounty. The devise to her is not absolute, nor are her powers unqualified. They are all carefully guarded with reiterations of the purpose for which they are conferred. They are to be exercised for the common benefit of herself and the children, and for the good of "the estate," as distinct from the aggrandisement of her own private fortune. They pass, upon her marriage, to the testator's brother, unimpaired, for the same purposes. She has power to sell and convey, but not an unqualified power. Her estate and her powers are all in trust, although it is a trust in which she has also a beneficial interest—not the ownership of any part of any specific property, but the right while executing the trust to be maintained, or to expend in her own maintenance, so much of the property as may be necessary in her condition of life. After her death or marriage, the *corpus* of the property, which may not be exhausted, passes to those children or their descendants who may not have died without issue—the shares of the daughters to be separate property, for life only, with remainder to their respective children. These rights of the children are derived from the testator, through the will, and cannot be defeated by the widow. It consists with those rights, however, that she may change the property by sale and reinvestment during the continuance of the trust, or may sell off portions of it for the purpose of raising means to carry out the trust, but not for her own private advantage, independently of her right to share with the younger children in the maintenance.

We fully recognize the general principle, established as the American doctrine, that a *bona fide* purchaser, under a

plain power, need not see to the application of the purchase money, but this principle is not to be applied to cover collusive or careless transactions with the trustee, which, by obvious consequences, will defeat a trust, of which the purchasers are held to be cognizant. A court may consider all the circumstances.

With regard to the purchases under execution against the widow, and the deed of trust made by her, and the several conveyances by herself and the children, it may be sufficient to say of them, in a body, that none of them bind the complainant nor touch her interests. The widow had no right to the property nor power of disposal over it, save through the will. It was probated and of record in the usual depository, accessible to all the world. Creditors levying upon her property, and purchasers buying at execution sales took only such interests as she had. Those who took deeds of trust or conveyances through her, could, upon the slightest examination of her title, which only the most careless of persons would neglect, become advised of her obligations under the trust, and if they dealt with her in violation of them it must be at their peril.

Amongst the conveyances relied on by Davis to sustain his title to the whole "Back" Rabb land, is one that requires special attention. It will be observed that by the will, the executrix was authorized, during her life, if she should deem it expedient, to appoint and set apart to any of the children such portions of the estate in severalty as she might deem them entitled to. This judgment, which she was thus delegated to exercise, did not authorize her, upon any fair construction of the instrument to appoint all the estate to one or several to the exclusion of others. The portions she might deem them entitled to, were not to be measured by her private view of their merits, but were such portions in

value, as she might think them entitled to upon the ground of equality.

By deed, executed in April, 1870, she recites that her husband had devised to her all of his property in trust for her own use during her life, and at her death to the use of his children. She then proceeds to release to Henry C., James W., Robert D., and Pete Ann, in fee simple, in equal shares, all the property which she acquired under the will, reserving only one hundred and sixty acres upon which she then resided, with the household and kitchen furniture, and provides that that also shall go to the grantees after her death. Davis claims under conveyances from these grantees, and insists that her deed was in execution of her power to give to any of the children such portions as she might please, and that it excludes the interest of complainant, vesting in him the full title.

Evidently that cannot be maintained. She does not profess to act under that clause of the will, but assumes to be entitled to the whole interest during her life, and releases that. She conveys nothing. The use of the term "in fee simple" is meaningless, in such a release of a life estate if she had it. The effect of the release is only to estop her from claiming any personal benefits under the will. The power to portion off the children separately could only be exercised by deeds to them for the purpose, made with intention to execute the trust, and did not authorize her to give to some of them jointly the whole estate. It is obvious that her attempt to do so was not meant to be in execution of the power, and just as plain that she misunderstood her powers, claiming under the will an absolute title for life, of which she supposed she could denude herself to bestow it upon others regardless of any trust. The complainant does not question the efficacy of this deed and the releases of the children afterwards to Davis, to convey all their own rights,

but contends, and we think properly, that they cannot affect hers. "

In further support of this power of Mrs. H. A. Rabb to exclude complainant and her sister, Sarah E., from all further benefits in the estate, it is shown that in December, 1854, about a month after the execution of the will, the testator gave to his daughter, A. Cecilia, nine slaves. They are valued by defendant, Davis, at $7000, and it is contended that the gift effected an ademption of the legacy *pro tanto*, and that the whole estate left in the hands of the executrix when she released to the other children was not sufficient to give each of them a like amount. If the gift were indeed an ademption, she and her sister, Sarah, who by the will had been postponed until the others should have received $8000, would both be cut off from all further claims, and would have no standing in court to attack the conveyances.

There is a deposition by the testator's attorney and confidential adviser, with regard to this point, who states that he drew up the will, and also other instruments for the testator, and for his family after his death. He values the slaves given to Cecilia, about the first of December, 1856, at about $6000, and says he knows that the gift was intended as an advancement to the extent of the value.

Upon the other hand the testator's widow declares that the gift was *not* intended as an advancement. She says that she and her husband had, in 1853, apportioned each child certain lots of negroes, but that the deed for her part was not given to A. Cecilia until 1854; and that the reason for not executing deeds to the others was that none of them were of age before the war, by which the negroes were freed.

The testimony of the attorney gives no acts nor declarations of the testator from which his intention may be inferred, nor does it reveal any circumstances to enable the court

2. WILLS: Ademption by gifts in life of testator

to determine it. It is without any value, as the mere opinion of the attorney. We need not consider whether or not it was properly admitted.

Mrs. Rabb's testimony is entitled to more weight, as she supports her opinion by circumstances, which, if true, show very clearly that it could not have been the intention of the testator, in making the gift, to affect the provisions of the will. The lots of the other children were, at the time, already designated to them, in the minds of the parents, with the intention of making a full gift to each—not carried out in the lifetime of the father, because of the minority of some. If the shares of the others had remained in existence, it is very sure upon general equitable grounds that Cecilia could not have come in for an interest in the other slaves, and retained her own also, but they were all swept completely out of existence by an extraordinary event, which neither the testator nor any one else could have anticipated. The loss was common to all and equal to each. The enjoyment the complainant had of her share, before emancipation, was not more beneficial, we may presume, than that which enured to the minor children at the same time, whilst their shares were kept in the father's hands and managed for their benefit. It would be grossly unjust now to charge Cecilia with the value of her share, out of her fair and equal portion of the residue of the property, when the testator has been so careful to manifest a general overruling intention of putting all his children on an equality. But it is not necessary to resort to general principles of equity, arising from the extraordinary and unexpected change of circumstances. The case must, indeed, be considered in the light of the circumstances as they stood when the gift was made, as the sole question is, as to the intention of the testator at the time. This may be shown by parol when the question is one of ademption; and it is plain that the testator, intend-

ing to make his children equal, in his lifetime, with regard to slave property, or supposing that he had done so, could not, in making the gifts effective, from time to time, have meant to destroy their equality under the will. If such had been his intention, he would certainly have mentioned it in a will executed so nearly contemporaneous with the gift to one daughter, and after the intention had been formed to give like shares to others.

Moreover, we think the doctrine of ademption inapplicable to such interests as are given under the will. They are not legacies of definite sums, but of shares of property, in uncertain amounts, constituting, in effect, a residue of the estate. The doctrine of *advancements* is peculiarly applicable to the distribution of the estates of intestates. With regard to the *ademption* of legacies, by gifts, during life, its application has been confined to such legacies as are specific, or to general legacies of definite amounts in money, or something of the same nature. It is not applied where the bequest to the child in the will is of a residue, or part of a residue. *Williams on Exr's Mar., p.* 1202 ; *Roper on Legacies, vol.* 1, *mar. p.* 377 ; *Redfield on Wills, Part II, p.* 539. The court did not err in holding that the interest of Cecilia, in the will, had not been adeemed by the gift of the slaves.

Upon no principle ¦can it be held to have been adeemed by the use of a certain plantation in Mississippi, which had been allowed to her husband, but which was never conveyed.

We do not think that defendant, Davis, acquired any right whatever which a Court of Chancery can define and properly administer by virtue of the purchases under execution against Mrs. Rabb individually. The levies and sales were in violation and in defiance of a plain trust, of which her creditors are chargeable with notice. The mortgages,

52–38

deeds, releases and agreements executed by her and the other children, may serve as estoppels against her, and as conveyances of the interests of the other children, according to the import of the several instruments, but such interests, whatever they may be, must be made to adjust themselves to the equity of complainant, Cecilia, in the subject matter. It is no easy matter, but she is not responsible in any manner for the difficulty, and it is the duty of the Chancellor, if need be, himself to devise a scheme to be applied to the property within his control, in accordance with equitable principles, whereby her rights may be maintained to the fullest extent. Without further discussion of the steps by which Davis obtained title, it may be sufficient to assume, what sufficiently appears from the transcript, that all the rights in the "Back" Rabb place of 960 acres are vested in him, which belonged to the widow, Harriet A., and the four children, Henry C., James W., Dan'l F., and Pete Anne, with her husband, and which they were empowered to convey. Or, to state it differently, he owns the "Back" Rabb place, subject to the portions of the complainant's, A. Cecilia, and the children of Sarah in the whole estate. Whilst he cannot claim it a *right*, that they shall be satisfied out of the other portions of the estate, yet a Court of Chancery will not disturb the existing condition of things with regard to the "Back" Rabb place, if sufficient be found otherwise fully to satisfy their claims, without inequitable conditions or restrictions. All such cases must rest upon their own circumstances.

It was the duty of the widow to pay taxes on the whole land during her life and widowhood. The same duty devolves upon Davis, whilst in pernency of the rents and profits. If he has paid taxes by arrangement with the widow and the children, whose interests he acquired, and continues to pay them till partition, he cannot either

Davis et al v. Whittaker et al.

strengthen his title or acquire any right to reimbursment against these complainants. He must look for remuneration to the interests of those whose title he acquired, and ought to have kept them down.

It further appears that the defendant claims, and is entitled, also, to all the interest in the "Front" Rabb place, which belonged to J. W. Rabb in January, 1875, at which date he purchased it from said J. W., and took a conveyance. It is conceded that John N. Rabb, another of the minor children, mentioned in the will, is dead without issue. The fact of his actual death is uncertain, but the legal presumption of it attached before any of the conveyances were made affecting the property. His interest was ancestral, and had descended in equal parts to his three sisters, Cecilia, Pete Anne and Sarah, and to his three surviving brothers, Henry C., Dan'l F. and James W., in the proportions of one-sixth each. This interest, in the part of said John N., which belonged to Sarah, is now vested in her children who are made co-complainants. It is not probable that the estate will, before partition, become sufficiently valuable to entitle them to any more through their mother; but if by any chance it should exceed the value of $48,000, they would be entitled to represent her in an equal partition of the surplus, in addition to the interest which they take, through her, in the part of John N., their deceased uncle.

It is plain that, throughout, the widow has repudiated the construction herein declared, of her rights and duties under the will, and has acted without any regard to any trust. The said complications which have already arisen afford the best practical illustration of the utility of that branch of equity jurisdiction under which the courts construe trusts and direct trustees. The parties have acted throughout under a misconception. The estate seems to have been badly managed,

and the interests even of those capable of acting *sui juris* have, probably, been sacrificed. Had an early application for the solution of doubts been made to the Chancery Court, and the estate been wisely and prudently administered, as the testator intended and the court might have compelled, it might, notwithstanding the loss of the slaves, have served the purpose of educating the minors and maintaining them with the widow, and left clear valuable well defined interests which they might have waited to enjoy, or sold without sacrifice.

This was not done, and the result has been shipwreck from executions, neglected taxes, deeds of trust, mortgages, and releases of uncertain interests, which it is hard now to repair. It is the duty of the court, being appealed to for the purpose, to gather up the *disjecta membra* floating in confusion, and adjust them by such plan as it can devise under recognized principles of equity, so that hereafter all who deal concerning this property or any part of it, may at least tread securely.

It is useless to attempt to revive the trust. It has been long abandoned, and the necessity for it is passed away. The minors are all long since of age, and have released in great part, all their rights. The widow has chosen to retire for life upon one hundred and sixty acres, and claims nothing more. So far as we can see, no one complains of this. The court might, if there were any reason for it or equity in it, appoint a new trustee, but will not do so to enable the defendant, Davis, until the widow's death, to enjoy the whole estate, and, meanwhile, set the rights of complainants at defiance. The testator, in the anxious solicitude for his children, which he everywhere manifests, never contemplated any such result as that. The Chancellor should have declared the objects of the trust to have become accomplished or impossible of execution, and decreed immediate parti-

tion. The circumstances justify an acceleration of the clos-ing of the trust as completely as if the widow had died or married, and it consists with the general intention of the testator.

There would seem to be no necessity for a reference to determine whether or not there can be a division of the prop-erty in kind. It is not easy to perceive how one could be made so as to adjust all the complicated equities. If the Chancellor should be of the same opinion and none of the parties insist upon it, the costs need not be inflamed by requiring a report of commissioners upon this point, but the court may proceed at once to direct a sale of both planta-tions, saving the widow's life interest in the one hundred and sixty acres she has chosen out of the Front Rabb place. It is best that the places be sold separately, inasmuch as the interests of the parties in the two places vary. There may well be separate accounts of the two sales, and adjustments of proceeds in the same suit.

The court will fix such terms of sale as to time, as, in its opinion, will best insure a fair price, consistent with reason-able dispatch in closing up the whole matter, without regard to the times fixed for sales upon foreclosures by *section* 4708 of *Gantt's Digest*. This is not a case to which that section applies.

Out of the proceeds, after payment of all costs, the com-plainant, A. Cecilia, will be entitled to one-sixth by original right under the will, to be settled upon her for life, with remainder to her children or their descendants, in such man-ner as the court may order, and absolutely to one-sixth of one-sixth, or one thirty-sixth, through her deceased brother, Jno. N. Rabb. The complainants, James E. and Mary C., will be entitled jointly in the first instance to one thirty-sixth, with a contingent right to more, if the fund from both places

should exceed $48,000, when the original rights of their mother would begin under the will.

The defendant, Davis, or Fitzburgh (who, as Davis' vendee, is always intended when the rights of Davis are spoken of in this opinion) will be entitled out of each place to the rights or shares of the children who have sold or released to him their interests in the special place. No allowance will be made against complainants for taxes or improvements.

The several shares and proportions of the parties should, before sale, be ascertained and declared by the Chancellor according to the principles herein announced, using a master for the purpose, if advisable.

As this cause required the intervention of a court of equity for construction of the will, the Chancellor fitly decreed the costs and expenses to be paid out of the estate. The costs of the appeal will be against the appellee, Davis, in this court to be paid by him, with right of reclamation out of the fund when raised.

Reverse the decree upon the appeal of complainants below and remand the cause for further proceedings in accordance with this opinion, and the principles and practice in equity.