EMILY WELLING HAYES *vs.* W. BRENTON WELLING *et al.*, EXECUTORS.

MARCH 10, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Wills. Ademption. Advancements.*

An advancement after a will is made, to a child, is either a complete or a *pro tanto* satisfaction of a bequest even of residue and after such a *pro tanto* satisfaction of a residuary bequest, the obligation of the person advanced to account for the advancement upon distribution is not affected by the subsequent execution of a codicil republishing the will.

*(2) Wills. Ademption. Advancements.*

A legacy adeemed by an advancement is not revived by a codicil which merely republishes the will.

*(3) Wills. Ademption. Advancements.*

The principle that a legacy adeemed by an advancement is not revived by a codicil which merely republishes the will is not affected by the statute of

Wills, Gen. Laws, cap. 254, providing that a will shall be construed to take effect as if it had been executed immediately before the death of testator unless a contrary intention shall expressly appear by the will.

*(4) Wills. Advancements. Interest.*

While "advancements" in the technical sense, do not draw interest, it is possible to provide for interest by agreement, and in such case the interest stands as a part of the amount to be accounted for as advancement.

PROBATE APPEAL.    Heard on exceptions of both parties and exceptions of appellees sustained in part.

PARKHURST, J.    This is an appeal from a decree of the probate court of the town of North Kingstown, entered July 14, 1913, allowing the first account filed by the executors under the will of Katharine C. Welling, late of said North Kingstown.    The appellant, Emily Welling Hayes, being one of the children of Katharine C. Welling and a legatee and devisee under her will, appealed to the Superior Court from the decree aforesaid for various reasons which will hereinafter more fully appear; the appeal was tried before a justice of the Superior Court and a jury and resulted in a verdict, partly by direction of the trial court and partly by the finding of the jury, which will be more fully set forth; the appellees filed a motion for new trial, which was refused; and thereafter both the appellant and the appellees alleged exceptions upon various grounds and each filed a bill of exceptions, which was duly prosecuted, and the case is now before this court upon both these bills of exceptions.

The said Katharine C. Welling died domiciled in North Kingstown, R. I., December 2, 1908, leaving a will in which the said Richard W. G. Welling and W. Brenton Welling were named as executors; the said will was duly filed in the probate court of North Kingstown and was therein duly proved and recorded, and the said executors therein named thereafter duly accepted their appointment under said will, and qualified and have since acted as such executors.    On or about February 19, 1913, said executors filed the said first account of their administration of said estate with said

probate court of North Kingstown, and the same was received, due notice was given thereon and hearing thereon was continued from time to time until July 14, 1913, when it was decreed that the same be allowed and recorded. Thereupon the said Emily Welling Hayes duly filed her claim of appeal and reasons of appeal; said appeal was duly entered in the Superior Court for the county of Washington; jury trial of said appeal was claimed and the appeal was thereafter tried before a justice of the Superior Court and a jury in Washington county on March 2–17, 1914.

In her reasons of appeal the appellant after setting forth her interest and making the general claim that the decree is erroneous in law and in fact, claims specifically that the account is erroneous in charging her as being indebted to the estate in the sum of $26,496.75 for moneys alleged to have been loaned to her by the testratrix, claiming that she is not so indebted to the estate; that the executors have not charged themselves with moneys due from them to the estate; that the executors have distributed certain shares of the estate to other legatees and have withheld her share without reasonable cause or justification therefor; that the executors have failed to convert the personal estate into cash and to divide the proceeds among the legatees, deducting from the share of each legatee the indebtedness of said legatee, if any, to the testatrix or to her estate; that the executors have retained and refused to pay over to the appellant the sum of $1,400 wrongfully claiming that said sum was interest on an alleged indebtedness of the appellant to said estate; that the executors have wrongfully credited themselves with numerous payments of money which, if paid, were not paid for the benefit of the estate; that the executors have charged the said W. Brenton Welling with only 4 per cent. interest on money due from him to the estate, instead of the legal rate of 6 per cent.

Although it thus appears from the reasons of appeal that a very large number of items of the account were claimed to be improper for various reasons, and although the appeal

as tried in the Superior Court involved an extensive accounting by the executors, who charged themselves with upwards of $650,000, and claimed allowance for payments of upwards of $548,000, all contest as to very numerous small items in the account was, during the course of the trial, abandoned, and the parties confined themselves to the more important items referred to below.

The first real contest centered about certain payments aggregating $20,750 made by the testatrix to her daughter, Emily Welling Hayes (the appellant), which, with interest at 4 per cent. the executors, appellees, together with the other members of the family claim should be deducted from her share of the estate. This result she sought to escape by alleging that these payments to her constituted advancements, and that these advancements to her were wiped out by the execution of the will of the testatrix in 1903 and by the subsequent execution of a codicil to the will in 1907, in which codicil the testatrix reaffirmed and republished her will. The second real contest was over the claim made by the appellant that each of the executors was accountable to the testatrix at the time of her death for sums of money received by them during her lifetime as compensation for managing her property through a period of about sixteen years, and, in the case of Richard Welling, for compensation which he received from the testatrix for acting as her attorney at law on various occasions. On this branch of the case it is Mrs. Hayes's contention that these charges were unreasonable, unwarranted and unlawful and that this alleged indebtedness of each of the brothers to their mother should be shown as assets of the estate. This claim is disputed by the executors upon the two grounds, (1) that their charges as managers or as attorneys were fair and reasonable, and were all agreed to by Mrs. Welling; (2) that there was an account stated between them and their mother during her lifetime which cannot now be reopened.

Material facts in the case are as follows: Charles H. Welling, of New York City, the husband of Katharine C.

Welling, the testatrix in this case, died in 1892, leaving a will by which he gave all his property and estate—mainly real estate worth upwards of half a million dollars—to his wife Katharine C. Welling, absolutely and in fee, and named his two sons, W. Brenton Welling and Richard Welling, as executors. The real estate passing to Mrs. Welling besides her city residence at 46 Park Avenue, New York City, consisted of a business property on Leonard Street, a number of lots at St. Nicholas Avenue, lots on Convent Avenue, all in New York City, a large farm in Rhode Island, known as Pojac Point (which became the legal residence of Mrs. Welling), some lots in Flatbush, L. I., and a number of holdings in the West. Much of the property was subject to various large mortgages. There was also a line of stocks and bonds, most of which were pledged with his brokers for loans. Besides his wife he left surviving him six children: W. Brenton Welling, Emily Welling (later Emily Welling Hayes), Katharine Greene Welling, Richard Ward Greene Welling, Elizabeth Welling (later Elizabeth W. Mannierre), and Mary H. Welling (later Mary H. W. Baltz). Mrs. Hayes and Miss Katharine Welling are twins, as are Mrs. Mannierre and Mrs. Baltz. All of them still survive.

W. Brenton Welling was a banker and broker in Wall Street. He had acted as a banker for his father and mother in his father's lifetime, and his mother continued her deposits with him after his father's death. Richard Welling has been an attorney in active practice in New York City since 1883.

Almost at once Mrs. Welling executed a broad power of attorney to her two sons to manage the property left her by her husband. They took charge of the estate, first as executors, and shortly thereafter as agents under the power, which conferred substantially absolute powers. The chief reason for the execution of the power was convenience. Nothing of importance was done by the brothers without first discussing the matter with Mrs. Welling and obtaining her approval, as shown by the evidence of both the brothers.

The power of attorney was re-executed from time to time during the succeeding sixteen years of their mother's life time in order to keep it down to date. It was probably re-executed fourteen or sixteen times.

The brothers rendered full accounts to Mrs. Welling, at first monthly, later two or three times a year and always at least annually. They went over these accounts with her and explained to her in detail the condition of her property. She was a woman of splendid intellect, excellent health, and aware of all transactions with regard to her estate. She fully approved of the charges made by both sons for acting as her agents, and also of certain charges made by Richard Welling for legal services. The testimony above referred to is wholly uncontradicted.

Some eight months prior to Mrs. Welling's death, viz.: in May, 1908, a complete, formal account covering all transactions of the Welling brothers in the management of their mother's estate during the whole period of the brothers' management was made up by Haskins & Sells, certified public accountants, and submitted to her and all her children, and was approved by her in its entirety. No objection was made to it by any one of the children.

From the above testimony it appears that the Haskins & Sell's account was very carefully explained to Mrs. Welling and was also gone over in detail with Mr. Hayes (which he does not fully admit), and that he made no objection to it prior to the death of testatrix. It included a long series of detailed annual sheets as well as a general report and three large balance sheets showing receipts, disbursements and bank balances, and covered the whole previous period of sixteen years. As so much of the property was held by the Charles H. Welling Company, in which Mrs. Welling was the sole beneficial stockholder, this report and statement of account necessarily included both the accounts of Katharine C. Welling and the accounts of the Welling Company; the property and the receipts of income therefrom were the property of the said Katharine C. Welling and the accounts

made up by Haskins & Sells were in law and in fact accounts stated as between the brothers Welling as managers, agents and attorneys and their mother; although for convenience so much of her property and income was vested in and came to her through the company.

In 1903 the brothers, with their mother's approval, had formed a holding company for Mrs. Welling's real estate in New York City under the name of the Washington County Realty Company. It was a Rhode Island corporation authorized to do real estate business. Fifty shares of stock were issued at $100 par, forty-eight being held by Mrs. Welling and one each by her two sons, who with her acted as directors. The name was thereafter changed to "The Charles H. Welling Company."

Upon her death, her forty-eight shares comprised the great bulk of her estate, and were considered by the executors to be worth in the neighborhood of $12,000 each. They were inventoried at that figure, and aggregate $576,000.

Upon the death of Mrs. Welling in 1908, the two qualifying shares held by her sons were returned by them to the treasury of the corporation. They never had received any dividends —the stock is now in the company's treasury, and the brothers have never claimed any beneficial interest therein.

The Charles H. Welling Company is still a live corporation, holding large and valuable real estate in the city of New York, is regularly organized and holding proper meetings, with 48 shares of stock outstanding.

At the time of the death of Mr. Welling, Sr., Brenton, the oldest son, was already married and living in his own home. All of the other five children were then living at home with their mother. Richard remained at home during his mother's life and was her almost constant companion. He has never married. He devoted himself to her care, always breakfasted with her, drove with her frequently, and, by his kindness and attention to her wants, in the opinion of other members of the family, substantially lengthened her life. He was with her some part of every day when they both were in New York.

Mrs. Hayes, then Emily Welling, and her twin sister, Katharine, were about thirty-five years old. Katharine never married and always lived at home. Emily married J. Noble Hayes, a New York lawyer, in February, 1895, being then about thirty-nine years of age. She was always on terms of intimacy with her mother; after her marriage she spent as much time with her mother as she could, going to drive with her frequently and maintaining cordial relations. She was away from her mother for some months during the summer, in Bennington, Vermont, where she had a summer home; during some of this time her mother was at Bennington in the summer and lived near her.

Elizabeth Welling married Mr. Charles E. Mannierre, a New York lawyer interested in real estate, in January, 1900; and Mrs. Baltz, her twin sister, married Heinrich R. Baltz, a brewer of Philadelphia, in April, 1901.

Mr. Brenton Welling, with a wife and four children to support, found, shortly after his father's death, that he could not manage his mother's various business properties and investments as her agent without sacrificing his own business. From time to time therefore he found it necessary to borrow from his mother, always with her full knowledge, consent and approval. For his first loan he gave his $5,000 note, referred to later, upon which, as upon all of his other loans, he has always admitted liability. The note appears as a charge against him upon his executor's account. From time to time he borrowed further sums on open account. The total to December 2, 1908 (the date of his mother's death), amounted to $20,452.66, with interest to be added.

Richard Welling from time to time also borrowed smaller amounts from his mother, all of which he repaid in full during his mother's lifetime. All loans to Brenton and Richard were approved by Mrs. Welling, both before and after they were made. A full statement showing all of Brenton's loans in detail to date was approved by Mrs. Welling in May, 1903.

In early 1903 Mrs. Hayes, representing that she was in need of money, procured a payment of $500 from her mother. A month or two later Mrs. Mannierre learning of it said that she thought she was entitled to a loan also, and she was loaned $500. As will later appear Mrs. Hayes afterwards was paid further sums amounting to $20,250, all of which (except $250 which was paid to her husband but of which she admits she received the benefit) she now claims constituted an advancement and disputes any liability or obligation with reference to its repayment or deduction from her share of the estate. Neither Brenton Welling nor Mrs. Mannierre disputes his or her obligation to repay the full amounts received by them. The principal amounts claimed to be due from W. Brenton Welling, Mrs. Mannierre and Mrs. Hayes, as set forth in the executors' account, are as follows: W. Brenton Welling, $20,452.66; Mrs. Mannierre, $500; Mrs. Hayes, $20,750.

In a very general way, the circumstances relating to the later payments to Mrs. Hayes were as follows: In 1903 and early 1904, there was talk about Mrs. Hayes' home being unsatisfactory; and various propositions were made looking to her moving to another house; after a number of suggestions had been made, it was finally determined that Mrs. Welling would let Mrs. Hayes have the sum of $17,500 towards buying a house; à contract for purchase of a house on East 17th Street was made by Mr. and Mrs. Hayes; a check for $1,000 to the order of J. Noble Hayes, signed on behalf of Mrs. Welling by R. W. G. Welling, and dated March 21, 1904, was sent to Mr. Hayes to be used as earnest money and was so used; on April 26, 1904, a check for $16,500, signed on behalf of Mrs. Welling by R. W. G. Welling to the order of Emily W. Hayes was sent to the latter, to make payment of the balance to be paid on the purchase; later on, it having been found that extensive repairs had to be made, a further check dated November 15, 1904, to the order of J. Noble Hayes for the sum of $2,500, signed by Mrs. Welling by R. W. G. Welling, was sent to Mr. Hayes to

pay for the repairs; all these amounts were used in the
purchase and repair of the house on East 17th Street above
referred to, and the house was duly conveyed to Mrs. Hayes.
There is evidence that it was understood by Mrs. Welling
and both her sons that these advances of money for said
purposes were to be regarded as loans to Mrs. Hayes, and
to be on the same footing as were the loans to her son,
Brenton; that only on this basis did she consent to advance
the money which she did reluctantly, as she was obliged to
mortgage her own residence in New York in order to raise
the funds.   There is also evidence that the brothers fre-
quently thereafter tried to get from Mrs. Hayes a demand
note or notes to the amount above set forth in acknowledg-
ment of her obligation, which she failed and refused to
sign and deliver, acting upon the advice of her husband.
It is further in evidence that the various sums paid over to
Mrs. Hayes were charged to her as loans and so plainly
appeared on the Haskins & Sells statement of account above
referred to, which was sent to Mr. Hayes in 1908, and that
neither he nor Mrs. Hayes ever objected to such statement
until after the death of Mrs. Welling.   Mrs. Hayes and her
husband, on the other hand, deny that they accepted these
sums as a loan and claim that they were made by Mrs.
Welling as an advancement out of Mrs. Hayes' future
interest in her mother's estate.   There was much conflicting
evidence from the parties as to whether these sums of money
were to be treated as a loan or an advancement; but in
view of the final form which the transaction took we think
the jury was justified in treating it as an advancement as
they finally did when the matter was submitted to them at
the close of the trial.

The attempts of the brothers to procure Mrs. Hayes'
signature to notes continued at least until late in 1904.
About the end of November, finding that they could not
procure her signature to a note, Richard Welling sent her
an ordinary receipt reading as follows:

"RICHARD W. G. WELLING,
        *Counsellor-at-Law,*
            2 Wall Street,
                New York.

                                    NOVEMBER 30th, 1904.

Advances by Katharine C. Welling to Emily W. Hayes, the said advances to draw interest at four per cent (4%).

| | |
|---|---:|
| January 13, 1903 | $500 |
| March 21, 1904 | 1,000 |
| April 26, 1904 | 16,500 |
| November 15, 1904 | 2,500 |
| | $20,500" |

This was sent to Mrs. Hayes for signature with the idea of at least getting her on record as to the receipt of the money and her liability for the same with interest. It was the last form submitted by the brothers. Mr. Hayes says that no "notes" were afterwards presented, impliedly admitting that notes had previously been presented.

Nothing was done until February 7, 1905, when Mr. Hayes dictated, and his wife wrote in long hand at his dictation the following paragraph beneath the above:

"I acknowledge receipt of the above amount from my mother, which I understand is a payment to me in advance out of my expectation in her estate and to be deducted with interest from any amount which may otherwise come to me.

                            EMILY WELLING HAYES.

FEBRUARY 7, 1905."

This receipt so signed was sent to Richard Welling on or about February 7, 1905; it was never returned to Mrs. Hayes; nor was any demand afterwards made by either of the brothers or by Mrs. Welling or anyone in her behalf upon Mrs. Hayes for any further or different acknowledgment of the sums of money mentioned or of her liability

therefor.    Since it has been repeatedly testified in the case that all transactions of importance were always shown and explained to Mrs. Welling by her sons, it is to be assumed that this important transaction and receipt were also fully shown and explained to her, and that she fully understood the purport thereof.    It does not appear that she ever pressed her daughter for repayment or took any steps to enforce the obligation of repayment of a loan from her daughter; and we think it must be assumed therefore that Mrs. Welling acquiesced in this settlement of the matter and thereafter continued to regard the moneys so paid to her daughter as an advancement out of her daughter's future interest in her estate.

It further appears that in the month of August, 1907, Mrs. Hayes was seriously ill; and Mr. Hayes wrote to Richard Welling under date of August 20, 1907, expressing himself as being greatly worried about her and as being short of ready money; in consequence of this letter, Richard Welling on August 21, 1907, wrote to Mr. Hayes with expression of much good will and suggested a loan of $250 from his mother to help the Hayes's in their difficulties; he sent a check dated August 21, 1907, to the order of J. Noble Hayes for $250, signed "Katharine C. Welling by R. Welling," the receipt of which Mr. Hayes duly acknowledged as a loan by letter dated August 23, 1907.    This amount of $250 was turned over to Mrs. Hayes and used by her and appears charged to her as a loan on the Haskins & Sells statement of account. Mrs. Hayes in her testimony first claimed that this was a gift and admitted that she received and used the proceeds of this $250 check; but finally when confronted with her husband's letter acknowledging it as a loan, she admitted that it was a loan and not a gift.    Mr. Hayes now claims that it was a loan to him; and he also admits that he never paid it.    In view of the confused and unreliable testimony of both Mr. and Mrs. Hayes not only with regard to this loan, but also with regard to other small loans which were made from time to time by Mrs. Welling for the benefit

of Mrs. Hayes, we think there was evidence which might have warranted the jury in finding that this $250 was a loan to Mrs. Hayes, was so treated by Mrs. Welling and her sons as her agents, and was so regarded at the time by Mr. and Mrs. Hayes. It appears that this sum was added at the foot of the advancement receipt as follows: "Also received in addition to the above, and subject to the same agreement $250.00. Date, August 19, 1907;" but it does not appear that this entry was ever made known to or agreed to by Mrs. Hayes, and there is no evidence that it ever became an "advancement;" in fact it appears that this addition to the advancement receipt was probably made by Mr. Welling's bookkeeper without his authority and nothing further was ever done about it. On the whole testimony with regard to this item we are of the opinion that this $250 was never acknowledged by Mrs. Hayes as a loan to her or as an advancement; and that the jury were warranted in their finding that Mrs. Hayes was not indebted to her mother for this amount.

It is the theory of the appellant, Mrs. Hayes, through her counsel, that the various sums aggregating $20,500 as set down in her advancement receipt are to be treated not as loans, but as "a payment to me in advance out of my expectations in her estate and to be deducted with interest from any amount which may otherwise come to me;" and it is her contention further that the execution of the codicil to the will of February 2, 1907, whereby the will dated November 20, 1903, was reaffirmed and republished, wiped out the advancements and the ademption or satisfaction of her legacy under the will, and reëstablished the legacy for her benefit in full. Upon this point of law the justice of the Superior Court before whom the case was tried ruled in her favor, speaking of the amount aforesaid, as follows:

"It is a loan or advancement. It is the fact that the payment of the money to Mrs. Hayes was prior to the execution of the will, which was in 1903, and the execution of the codicil reaffirming and confirming the will, which was in

1907. Now if that was an advancement I charge you that it was wiped out by the execution of the will and codicil as it stands, and to that ruling I note the exception of the appellees.

"Appellees' exception noted.

"That wipes it out, gentlemen. If it was a loan, it didn't make any difference. There is the whole thing just as clearly as I can put it to you."

There was error in this statement, in fact, because it did not clearly state that only $500 was advanced prior to the execution of the will, and that $20,000 was advanced after the execution of the will and prior to the execution of the codicil. However, this lack of clearness of statement is not very material under the circumstances, although it may have misled the jury, because if it were the law that the execution of the codicil had been effectual in law to wipe out the prior advancement and set up the legacy thereby adeemed or satisfied, it appears that the codicil was executed in 1907, after the various sums amounting to $20,500 had all been paid to the appellant. But we do not find the law to be as claimed by the appellant, and as charged by the court at *nisi prius* as above set forth.

It must not be forgotten that the first payment of $500 by Mrs. Welling to her daughter, the appellant, was made January 13, 1903; that the will bears date and was executed November 20, 1903; that the advancement receipt bears date November 30, 1904, and was executed and delivered February 7, 1905, and shows the dates of the several payments to have been January 13, 1903; March 21, 1904; April 26, 1904; November 15, 1904; and that the codicil was executed February 2, 1907. It thus appears that the appellant on February 7, 1905, acknowledged the receipt of the various sums, aggregating $20,500 as advances from her mother out of her expectation, etc., to be deducted with interest at 4 per cent., etc., as already set forth, and that Mrs. Hayes after the date of the will agrees to treat the original $500 as an advance or advancement like the other sums advanced

after the date of the will. The sole question of law on this branch of the case is, what is the effect of the codicil upon these advancements ? The appellant's contention is that, although an advancement made by parent to child after the execution of a will is treated like an advancement in case of intestacy and deducted from the child's share of the estate, yet if a codicil is later executed which republishes the will without mentioning the advancement, its effect is to convert the advancement into an absolute gift for which the child need not account. Upon a careful examination of the authorities upon this point we find that the overwhelming weight of authority is contrary to this contention. The principal case cited by the appellant's counsel in support of his position is that of *Bowron* v. *Kent*, 190 N. Y., 422; but this case is not an authority in support of the appellant's position.

The facts there were that testatrix, on the death of her husband, to prevent a contest of her husband's will by his niece, set aside a trust fund for the use of the niece during the life of testatrix, remainder to the issue of the niece if she died before the testatrix, or to the niece if she survived. The trust declared that the fund should be treated as an advance on account of any share the niece should acquire in testatrix's estate. Testatrix thereafter made a will by which in the fifth clause she bequeathed one-fifth of her residuary estate to a class, of which the niece was one, the trustees under the will being required to invest the same and pay the income to the class during their respective lives, and on the death of any one to transfer his share absolutely to his issue. It was held that, as no advancement previously made to the niece could be deducted from the interest of the niece as given by the will without seriously impairing, if not destroying, the whole scheme of the testatrix in creating the trust, such interest under this provision of the will was not subject to deduction by reason of the advancement. And as to a further provision of the will whereby the said Sara H. Kent had become entitled to a certain distribu-

tive share on the death of her mother, it was evident that the
testatrix having made her will long after the advancement
agreement, making no reference to any deduction on account
thereof from any share of her estate, and allowing the same
to stand unaltered for several years, after it became evident
that Mrs. Kent would be entitled to a substantial share
under the residuary clause, it was the evident intention of
the testatrix that Mrs. Kent should take under the will
without deduction for advancement.    The case is authority
only for the general proposition that where a parent or one
standing *in loco parentis*, having made advancements to the
child, afterwards makes *a will* disposing of his whole estate
without provision for deduction of advancements, such
advancements will no longer be regarded as advancements
and will not be deducted from the share bequeathed by the
will.    This is a familiar doctrine, well supported by authority
and many cases in support thereof are discussed in the
opinion.

(1)     On the other hand the great weight of authority is to
the effect that:   (1)  An advancement, after a will is
made, to a child is either a complete or a *pro tanto* satisfaction
of a bequest even of residue.    (Mrs. Hayes was a residuary
legatee under her mother's will);   (2) that after such a
*pro tanto* satisfaction of a residuary bequest, the obligation
of the person advanced to account for the advancement
upon distribution is not affected by the subsequent execu-
tion of a *codicil* republishing the will.

In *re Weiss*, 78 N. Y. Supp. 877 (1902), the case holds
that where a parent gives a legacy to a child without stating
any particular purpose, it is regarded as a portion, and if an
advancement is made later, such advancement is a satis-
faction either *pro tanto* or in full.    If the testatrix, after
giving a legacy to a child, makes an advancement to him,
such payment amounts to a satisfaction.    "This rule is
based upon a presumption against double portions; that is,
a presumption adopted by courts of equity that a parent
owing a common duty to all of his children, could not have

intended to distribute his estate unequally among them, and to favor one at the expense of the others.  . . .  Taking the will as a whole, it is saturated with a purpose and wish, plainly in the mind of the testatrix, of treating her children with absolute equality."

In *Paine* v. *Parsons*, 14 Pick. (Mass.), 318, testator made a will in 1818, giving $268 to his daughter, Sally.  At her marriage in 1822 he gave her approximately $200.  In 1830 the testator made a codicil to his will in which he said:  "I further give to my daughter, Sally  . . .  $100  . . . and to my daughter, Elizabeth  . . .  in addition to what I have before given them," etc.  It was held that the rule was well settled that an advancement of money and goods to a child is presumed to be an ademption or satisfaction of a legacy in a previous will.  "The general rule is not much contested in the present case; but it is insisted that such a presumption is rebutted by the fact, that the testator, after the marriage of his daughter, and after the delivery of the money and goods, made a codicil operating by way of republication of his will, by which he gave the same daughter $100 in addition to what he had before given her.  But the court are of opinion that the republication of the will by the codicil, did not rebut the presumption of ademption and satisfaction of the legacy given by the will, or change the general rule."

From these two cases it follows that an advancement may operate as a *pro tanto* satisfaction of a general legacy; and to the same effect see *Nall* v. *Wright's Ex'ors.*, 26 Ky. L. Rep. 253; *Ware* v. *People*, 19 Ill. App. (19 Bradw.) 196.

In the case of *Nall* v. *Wright's Ex'ors.*, *supra*, it was held that where the plain language of a will showed that the testator intended his children to share equally in his estate, the will will be so construed, if possible.  So, although it provide that advancements made to children are not to be charged to them, this will be construed to relate only to advancements made prior to the execution of the will. The dominant idea of the will was equality among the three

children, and although a will is to be construed with reference to the death of the testator the intention is the most important factor.

The case further holds that even if the will exonerates legatees from accounting for advancements, yet if the scheme of the will is equality, they may be charged with *later* advancements.

It is plain that if advancements are made after the execution of a will, without more, they will be deducted from the child's distributive share of the estate. *Montefiore* v. *Guedalla*, 1 DeG. F. & J. 93 (1859); *Meinertzagen* v. *Walters*, L. R., 7 Cha. 670 (1872); *In re* Weiss, 78 N. Y. Supp. 877, *supra; Paine* v. *Parsons*, 14 Pick. (Mass.) 318, *supra; Nall* v. *Wright*, 26 Ky. L. Rep. 253, *supra; Ware* v. *People*, 19 Ill. App. (19 Bradw.) 196, *supra; Trammel* v. *Trammel*, 148 Ind. 487; 2 Jarman, Wills, pp. 1160-1162. And see *Guthrie* v. *Turner's Ex'ors.*, 14 Ky. L. Rep. 336; *Palmer's Ex'r.* v. *Turner*, 4 Ky. L. Rep. 534.

The leading case upon this point is *Montefiore* v. *Guedalla*, 1 DeG. F. & J. 93. Testator provided that X should receive a legacy of £3,000, residue equally to testator's children X, Y and Z. Thereafter testator advanced £2,000 to X. The court states the first question to be whether, if there had been no legacy of a specific amount given by the will there could be an ademption *pro tanto* of the one-third residue bequeathed to the legatee. The Lord Chancellor says: "It has been said that neither can there be an ademption where a testamentary gift is of the residue of the testator's personal property, nor can such testamentary gift operate as a satisfaction of a covenant to make a provision to a given amount for a child. This position rests on no principle, and, if strictly acted upon, would produce great injustice. The doctrine of ademption has been established for the purpose of carrying into effect the intention of fathers of families in providing for their children, and of preventing particular children from obtaining double portions, contrary to such intention. The only reason for

the exception when the testamentary gift is of a residue is, that a residue is uncertain, and may be worthless." . . . "But if a testator, after directing his executors to pay debts, funeral expenses and legacies, goes on to say, 'and whereas, I wish all the residue of my personal property to be equally divided among my three children, I direct that each of them shall receive one-third of the said residue:' and afterwards, between the making of his will and his death, he advances £5,000 to a daughter on her marriage, or to a son to purchase a commission in the army, can there be any doubt that he meant this sum to be deducted from the one-third of the residue coming to the daughter or the son ?

"While it was strangely supposed that there could not be ademption *pro tanto* there might be some color for giving weight to the argument arising from the alleged uncertainty of the amount of a residue. But after the decision of *Pym* v. *Lockyer* (citing), establishing that there may be ademption *pro tanto*, the cases relied upon to show that there is a distinction on this subject between a bequest of a specific amount and the bequest of a residue, are left without any reasonable support." The court therefore decides that there can be an ademption of a residue, and further that such ademption ought to relate to a residue rather than to a specific legacy.

In *Meinertzagen* v. *Walters*, L. R., 7 Ch. 670, *supra*, following *Montefiore* v. *Guedalla*, it was said by James, L. J.: "The principle is that it must be presumed that a father intends equality between the children; and if he leaves the residue to the children, and afterwards makes an advance to one of the children, the general rule is that such advance must be brought into hotchpot, so that the disposition of his fortune, by which he intended to produce equality among the children may not be altered."

The fact that Mrs. Hayes was a residuary legatee, therefore, does not prevent the application of the doctrine of ademption or satisfaction *pro tanto*, by a subsequent advancement.

The old law was otherwise, being that a bequest or devise of residue was not subject to deduction because of an advancement by way of portion. *Farnham* v. *Phillips*, 2 Atk. 214 (1741).

The contrary is now everywhere well settled—that *a bequest of residue is subject to deduction for advancements*. *Montefiore* v. *Guedalla*, 1 DeG. F. & J. 93; *Meinertzagen* v. *Walters*, L. R., 7 Ch. 670; *Schofield* v. *Heap*, 27 Beav. 93; *Beckton* v. *Barton*, 27 Beav. 99; *Stevenson* v. *Masson*, L. R., 17 Eq. 78; *Van Houten* v. *Post*, 32 N. J. Eq. 709; *Re Estate of Elizabeth Turfler*, 1 Misc. (N. Y.) 58; *Gray* v. *Bailey*, 42 Ind. 349; *Carmichael* v. *Lathrop*, 108 Mich. 473; 13 Halsbury's Laws of England, 133; Theobald, Wills, 7th Ed., 767; 1 Underhill, Wills, 597, § 445; Rood, Wills, § 731.

(2)    A legacy adeemed by an advancement is not revived by a codicil which merely republishes the will. The law is well-nigh universal that any legacy, whether of residue or otherwise, which has been satisfied in full or *pro tanto* by making an advancement, will not be revived by a codicil which merely republishes the will. Such has been the settled law since the case of *Izard* v. *Hurst*, 1 Freem. 223 (1698), where the court said: "Where a legacy was given to a child, who afterwards upon marriage or otherwise had the like or a greater sum, it should be intended in satisfaction of the legacy, unless the testator should declare his intent to be otherwise; and it was said the words of ratifying and confirming do not alter the case, though they amount to a new publication, being only words of form, and declare nothing of the testator's intent in this matter." To the same effect are, *Drinkwater* v. *Falconer*, 2 Vesey, Sr., 623, (1755); *Monck* v. *Monck*, 1 Ball & B., 298; *Powys* v. *Mansfield*, 3 Myl. & C. 359; *Montague* v. *Montague*, 15 Beav. 565; *Booker* v. *Allen*, 2 Russ. & M., 270; *Hopwood* v. *Hopwood*, 7 H. of L., Cas. 728, 739, 747; *Re Warren*, 5 Newfoundland, 112; *Tanton* v. *Keller*, 167 Ill. 129 (Affirming 61 Ill. App. 625); *Trustees, etc.* v. *Tufts*, 151 Mass. 76; *Paine* v. *Parsons*, 14 Pick. (Mass.) 318; *Ware* v. *People*, 19 Ill. App. (19

. Bradw.) 196; *Langdon* v. *Astor*, 16 N. Y. 9, 57; *Howze* v. *Mallett*, 4 Jones Eq. (57 N. C.) 194, 196; *Alsop's Appeal*, 9 Pa. St. 374, 387; *Williams* v. *Neff*, 52 Pa. St. 326; *Louisville, etc., Co.* v. *Southern, etc., Seminary*, 148 Ky. 711; 1 Underhill, Wills, 298; Page, Wills, § 308; Rood, Wills, 397.

Thus in *Monck* v. *Monck*, 1 Ball & B. 298, the testator made a will by which X was to receive £5,000. The testator later paid him £5,000 and still later made codicil in which he said: "I do hereby ratify and confirm in all respects" the said will. It was held that X could not have his £5,000 over again, the Lord Chancellor saying, at page 306: "This amounts to a Re-publication to some Purposes I do admit; such as to pass after purchased Lands, and makes the Will speak from the Date of the Codicil, but I never knew it to set up a revoked, or an adeemed Legacy."

In *Powys* v. *Mansfield*, 3 Myl. & C. 359, 376, the Lord Chancellor said: "It is very true that a codicil republishing a will makes the will speak as from its own date for the purpose of passing after-purchased lands, but not for the purpose of reviving a legacy revoked, adeemed, or satisfied. The codicil can only act upon the will as it existed at the time; and, at the time, the legacy revoked, adeemed, or satisfied formed no part of it. Any other rule would make a codicil, merely republishing a will, operate as a new bequest . . . ."

In *Trustees, etc.* v. *Tufts*, 151 Mass. 76, it was said by Holmes, J., page 79: "The republication of the will by the codicil does not change or enlarge the meaning of the words of the will, on which the plaintiff must rely in order to recover the legacy. It follows that the legacy was adeemed by the sale of the stock."

In *Paine* v. *Parsons*, 14 Pick. (Mass.) 318, it was held that the republication of the will by a codicil did not rebut the presumption of satisfaction of a legacy by an advancement.

And to the same effect are all of the other cases above cited.

In view of these authorities with which we find no reason to disagree, we are of the opinion that the advancements to Mrs. Hayes were an ademption or satisfaction *pro tanto* of the residuary bequest to her in her mother's will, and that the codicil of February 2, 1907, had no effect to set up the portion of the residuary bequest which had been previously adeemed or satisfied.

The citations of authority made by counsel for the appellant upon this point of the case do not support her contention. The case of *In re Scott* (1903), 1 Ch. 1, finds the moneys to have been paid as a gift and not as an advancement on the facts of the case. In *Bird's Est.* 132 Pa. St. 164, where the testator bequeathed legacies to the guardian of two of his children, who were minors at the date of the will, to be expended for their education, and afterwards during his lifetime paid for their education and died after they became of age without having changed his will, it was held that his payments for education did not adeem the bequests, and that the children were entitled to receive the sums bequeathed after his death; the case is no authority for the position that the codicils made by the testator revived an adeemed legacy. In Rood on Wills, § 397, note 16, cited on behalf of the appellant, the text of the very section cited says, "Re-execution is generally held not to renew gifts, that had been adeemed or satisfied," and among other cases cites *Paine* v. *Parsons*, 14 Pick. 318, *supra*, *Howze* v. *Mallet*, 4 Jones, Eq. (N. C.) 194, *supra*, and *Powys* v. *Mansfield*, 3 Myl. & C. 359, 377, *supra*.

Again, Mr. Hayes cites 40 Cyc. 1917, to the effect that "the doctrine of ademption by satisfaction is generally considered to be not applicable to residuary gifts," but the note to that section cites *Montefiore* v. *Guedalla*, 1 DeG. F. & J. 93, *supra*, which is a leading case showing the contrary, and omits to cite the large number of cases heretofore referred to where the modern doctrine is established. In *Davis* v. *Whittaker*, 38 Ark. 435, the court found that the evidence showed a gift and not an advancement, and the

statements of the opinion upon the point here under discussion are *obiter dictum* and contrary to the later authorities. In Williams on Exr's. p. *1196 it is said: "It was formerly considered that where the bequest to the child is of a residue or part of a residue, the subsequent advance cannot operate as an ademption" . . . . "But a contrary doctrine is now fully established," and in support of the last statement cites *Montefiore* v. *Guedalla, supra,* and a number of other cases above cited. Mr. Hayes refers to *Clark* v. *Kingsley,* 37 Hun. 246, as if it were in his favor, yet the opinion in that case on p. 248, says: "It has been many times held that a republication of a will by the execution of a codicil does not revive a legacy paid in whole or in part between the date of the will and the date of the codicil. The effect of a new will is quite different from the effect of a codicil. A codicil reaffirms the prior will so far as they are not inconsistent, while a new will revokes the whole of the prior will." Counsel for appellant also refers to 1 Jarm. on Wills, 6th ed., apparently quoting words which we do not find, there being no page given for the citation; but in this work at pp. 202, 203, we find this: "So it has been repeatedly held that a legacy to a child, which has been adeemed or satisfied by a subsequent advancement to the legatee, is not revived by a constructive republication of the will by means of a codicil, such codicil not indicating an intention to revive the legacy, though containing an express confirmation of the will in the usual general terms." . . . "It is very true that a codicil republishing a will makes the will speak as from its own date for the purpose of passing after-purchased lands, but not for the purpose of reviving a legacy, revoked, adeemed or satisfied. The codicil can only act upon the will as it existed at the time; and at the time, the legacy revoked, adeemed, or satisfied formed no part of it," citing *Powys* v. *Mansfield, supra,* and *Hopwood* v. *Hopwood, supra.*

Such is the character of the citations upon which counsel for the appellant seek to support their contention; the other

cases cited by them are either not in point or are based upon old authority which has been entirely swept away by the current of modern decision.

(3) Again Mr. Hayes in his supplemental brief, after concluding his discussion of the law as set forth in the above cases and citations from text-books, makes the further claim that: "The Rhode Island Statute of Wills seems to set at rest, for this State at least, the question as to the effect of the re-execution of a will by a codicil, for *it makes it for all purposes equivalent to the making of a new will,*" and quotes Chapter 254, General Laws, R. I. (1909), as follows:

"Sec. 1.  As used in this chapter, the word 'will' shall extend  .  .  .  to a codicil  .  .  .  ."

"Sec. 6.  Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall expressly appear by the will."

Section 13 requires that the will shall be signed by the testator or some one in his presence at his direction in the presence of two witnesses.  Mr. Hayes contents himself in his brief with this bald statement and cites no authorities in support of his position.  If we understand his position, it is this: that inasmuch as the statute says a will shall "speak and take effect as if it had been executed immediately before the death of the testator" the whole doctrine of ademption or satisfaction of legacies by advancements is wiped out, since now, under this statute, every will is a "new" will; consequently unless express provision is made in the will with regard to charging advancements, made by the testator in his lifetime, against legacies or bequests, all such advancements are deemed to be converted into gifts by the will.  We find no ground for any such construction nor has any case been brought to our attention where any such effect has been given to this section of the Wills Act.

The portions of our statute, Gen. Laws (1909), Chap. 254, above referred to are copied verbatim from the English

Wills Act (7 Wm. IV and 1 Vict. Ch. XXVI; 77 Stat. at Large (Eng.) Ch. XXVI, p. 80 (1837). The sections compare as follows:

ENGLISH WILLS ACT.

"Section I. . . . The Words and Expressions hereinafter mentioned . . . shall in this Act . . . be interpreted as follows: . . . the Word. 'Will' shall extend to a Testament, and to a Codicil, and to an Appointment by Will or by Writing in the Nature of a Will in exercise of a Power . . . .

"Section XXIV. . . . Every Will shall be construed, with reference to the Real Estate and Personal Estate comprised in it, to speak and take effect as if it had been executed immediately before the Death of the Testator, unless a contrary Intention shall appear by the Will."

LAWS OF R. I., CHAPTER 254.

"Section 1. As used in this chapter, the word 'will' shall extend to a testament and to a codicil and to an appointment by will, or by writing in the nature of a will, in exercise of a power . . .

"Section 6. . . . Every will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall expressly appear by the will."

Case after case has been decided in England since the Wills Act of 1837, all holding that the doctrine of ademption, or satisfaction of legacies by subsequent advancements, is in full force; and it is nowhere suggested that this doctrine has been in anywise affected by the sections of the Wills Act above quoted, nor any other sections of the Wills Act. *Pym* v. *Lockyer*, 5 Myl. & Cr. 29 (1840); *Montague* v. *Montague*, 15 Beav. 565 (1852); *Schofield* v. *Heap*, 27 Beav. 93 (1858); *Montefiore* v. *Guedalla*, 1 DeG. F. & J. 93 (1859); *Beckton* v. *Barton*, 27 Beav. 99 (1859); *Watson* v. *Watson*, 33 Beav. 574 (1864); *Stevenson* v. *Masson*, L. R. 17 Eq. 78 (1873–1874); *Meinertzagen* v. *Walters*, L. R. 7 Ch. App. 670 (1872); *Leighton* v. *Leighton*, L. R. 18 Eq. 458 (1872); *Lacon* v. *Lacon* (1891) 2 Ch. 482; *In re Beddington* (1900) 1 Ch. 771; *In re Furness* (1901) 2 Ch. 346; *In re Scott* (1903) 1 Ch. 1; *In re Peel's Settlement* (1911) 2 Ch. 165.

In only two of these cases has Section 24 of the English Wills Act been referred to on the question here under dis-

37

cussion. In the last cited case (*In re Peel's Settlement*) the judge expressly said that in his opinion Section 24 had no application to the question of the satisfaction of legacies; and in *Lacon* v. *Lacon*, during the course of the argument, upon the question of ademption of a part of a legacy, Bowen, L. J., interjected this question: "Bowen, L. J.: If it was supposed that the intention of the person in *loco parentis* was formed at the time he made his will, did not the provision in the *Wills Act*, which makes the will speak from the death of the testator, effect the presumption?" to which counsel replied: "Under the *Wills Act*, for the purpose of construing the will and ascertaining what passes under it, it is to be read as if it bore date immediately before the death of the testator; but for many purposes the date of the will must still be looked at, and the date must remain unaltered. The presumption remains unaltered because the ademption is outside the will;" . . . . Since this question as to the effect of Section 24 of the *Wills Act* is not again referred to and is not discussed in any of the opinions it is apparent that it was considered to have no application to the question of ademption, and that the answer of counsel was satisfactory. It is quite evident therefore, that the advancements made to Mrs. Hayes by her mother and acknowledged by the advancement receipt signed by Mrs. Hayes, February 7, 1905, to the amount of $20,500 "to draw interest at four (4%) per cent." were, under the law as now for a great many years established, to be regarded as an ademption or satisfaction of the residuary bequest to Mrs. Hayes *pro tanto*, and that the codicil subsequently executed had no effect to set up that portion of the residuary bequest so adeemed. Counsel for the appellees have in their brief contended that the clause agreeing that the advances draw interest is inconsistent with the idea (4) of advancement and is evidence of a loan; in view of the language of the receipt we find nothing to support this contention. It may be admitted that "advancements" in the technical sense do not draw interest where no such

agreement is made, and, where there is no evidence of such intention on the part of the testator; see *Baker* v. *Safe Dep. & Trust Co.,* 93 Md. 368, 375, 377, 381; *Garth* v. *Garth,* 139 Mo. 456; *Osgood* v. *Breed,* 17 Mass. 356; but it is expressly said in *Baker* v. *Safe Dep. & Trust Co., supra,* that where the testator charged interest on certain advances for the purpose of equalizing the advances made to his children, the interest stands as a part of the amount to be accounted for as advancement; there is evidence in this case that the rate of 4 per cent. was fixed both upon the loans to Brenton and upon the advances made to Mrs. Hayes for purposes of equalization. As Mrs. Hayes by her receipt agreed to the charge of 4 per cent. interest, we see no reason to hold either that she is not properly chargeable with interest according to her agreement, or that the interest charge in anywise modifies the nature of the agreement as to the sums with interest being chargeable to her share of the estate as advancements.

At the conclusion of the testimony the jury rendered a verdict as follows:

"In the above entitled case, the jury find:

"1.   That the appellant, Emily Welling Hayes, was not, at the time of the death of said testatrix, indebted to her for moneys loaned by the testatrix in her lifetime to the appellant and is not now indebted to her estate.

"2.   That the appellant, Emily Welling Hayes, did not, by her husband as her duly authorized agent, assent to the retention of any shares of stock of the C. H. Welling Company by the executors.

"And by direction of the court the jury further find:

"3.   That said W. Brenton Welling is not indebted to the Estate of the testatrix in any sum beyond that mentioned in the account rendered by said executors.

"4.   That said Richard Welling is not indebted to the Estate of said testatrix.

"5.   That an account was stated between the testatrix and W. Brenton Welling and Richard Welling, her agents, in the time of said testatrix."

The jury also made special findings as follows:

"SPECIAL FINDINGS.

"I.   Is the appellant, Emily W. Hayes, indebted to her mother's estate for a loan of money made to her by her mother in her lifetime ?   If so, to what amount.

"She is not indebted.

"II.   Did the appellant, Emily W. Hayes, at the meeting of March 30th, 1909, by her husband as her authorized agent, agree to the retention by the executors of any shares of the Charles H. Welling Company ?

"No."

A motion for a new trial by the appellees on the ground that the verdict, except such part thereof as was found by direction of the court, was contrary to the evidence and the weight thereof and was contrary to law, was duly filed and was denied after a hearing.   The appellees thereupon filed their bill of exceptions.

With regard to the first finding of the jury in the verdict as above set forth based upon the first special finding, that the appellant was not indebted to her mother for moneys loaned, as already intimated above, we think the evidence as a whole warranted the jury in so finding.   Whatever may have been the understanding of Mrs. Welling and her sons at the times when the various sums were advanced, we think the evidence of the advancement receipt signed by Mrs. Hayes and accepted by the Wellings was quite sufficient to warrant the jury in finding that the sums advanced, amounting to $20,500 with interest at 4 per cent., even if originally made as loans, were converted into advancements by the acquiescence of the testatrix.   With regard to the sum of $250, loaned to Mr. Hayes, we find that the jury were justified by the evidence in believing that this was a loan to Mr. Hayes for which he was personally responsible, and for which Mrs. Hayes never became liable either as loan or advancement.

With regard to the second finding based upon the second special finding that Mrs. Hayes did not on March 30, 1909,

by her husband as her agent agree to the retention by the executors of any shares of the Charles H. Welling Company, we think the evidence as a whole was sufficient to support this finding as a matter of fact. But in view of the nature of the obligation of Mrs. Hayes to account for her advancements and to repay them out of her share of the residuary estate, as above fully discussed, this finding was quite immaterial. It was the duty of the executors for their own security and for the protection of the other legatees under the will to retain such portion of the estate otherwise distributable to Mrs. Hayes as would amply secure the repayment of the advancements to her; so that her agreement to such retention was not necessary, and her refusal to agree to it was immaterial.

With regard to the three findings by direction of the court, as above set forth, we are of the opinion that the court was fully justified by the evidence in so instructing the jury. Although Mr. Hayes has suggested in argument repeatedly that Mr. Brenton Welling and Mr. Richard Welling had charged their mother, acting as her agents and attorneys, with various large sums of money which were largely in excess of the value of their services as such agents and attorneys, there is no evidence in support of any such claims. It does appear in evidence, that their services were very valuable and practically indispensable to her; that they managed her estate which was heavily mortgaged, with care and fidelity and with profit to her; that they carefully accounted to her for all their receipts and disbursements and charges for services, and carefully explained to her all matters involved and that she fully understood all that they were doing and approved thereof, and of their allowances and charges on their own behalf for their services. Considering the amount of the estate and the nature of it, the incumbrances and all the time and care necessary in the prudent management thereof, we find nothing in the evidence or on the face of the accounts to warrant us in saying that any of their charges were unreasonable or improper. There is

no evidence whatever as to any particular sums charged to show that they or any of them were excessive or what amounts if any could have been properly charged. The elaborate account drawn up by Haskins & Sells, and submitted to the testatrix many months before she died, which was fully explained to her, and was likewise submitted to all members of the family, and to which no objection was ever made by any of them until long after Mrs. Welling's death bears upon its face ample evidence of the care with which it was drawn up and we find nothing therein which justifies any of the criticisms of Mr. Hayes. While it is true that Mrs. Welling was an old lady, it is to be remembered that she had been familiar with the details of her estate from her husband's death in 1892 to her own death in 1908, and there is nothing shown as to her condition of mind up to the time of her death to warrant the inference that she was not fully capable of understanding and approving the accounts as stated, as the evidence shows that she did. We are unable to see what the Welling Brothers as her agents and attorneys could have done, other than they did, to keep her fully posted as to all her affairs, and there is ample evidence of fair dealing and full disclosure on their part of all their doings. The court was amply justified by the evidence in instructing the jury and directing them to find that said W. Brenton Welling was not indebted to the estate of the testatrix in any sum beyond that mentioned in the executors' account; that said Richard Welling was not indebted to the estate; and that an account was stated between the testatrix and the sons as her agents in her lifetime. There is no evidence upon which this account stated could be opened, even if this proceeding were appropriate for that purpose. Since the exceptions on behalf of the appellant, Emily Welling Hayes, relate solely to the three instructions of the court to the jury embodied in their verdict and just discussed, we find no merit in them and they are all overruled.

Numerous specific exceptions were taken during the progress of the trial on behalf of the appellees; some of them

are now expressly waived. As to those relied upon, we find only one of them to have been of sufficient force or value to warrant extended consideration. Nos. 3, 4, 5 and 11 relating to admission and rejection of certain evidence show no prejudicial error and are overruled. Nos. 14 and 15 relating to a certain answer and certain remarks of appellant's counsel in the progress of the trial, while they show improper conduct on his part before the jury, were sufficiently commented upon by the court before the jury at the time they were made to deprive them of any prejudicial effect upon the rights of the appellees; these exceptions are overruled. Exception No. 16 was to a refusal of a request for an instruction directing the jury to make a certain special finding with regard to an agreement on behalf of the appellant relating to the giving by Mrs. Hayes of a promissory note for the sum of $17,500 paid over to her for the purchase of the house. We think the refusal was proper for the reason that the requested instruction was not strictly in accord with the evidence, and for the further reason that the question of fact whether this was a loan or an advancement was before the jury upon all the evidence, and it was for the jury to find the fact and not for the court to instruct them as asked. They had already been properly instructed in this regard except as to a single question of law, which is the subject of Ex. No. 17; therefore Ex. No. 16 is overruled.

Exception No. 17 is as follows: "17. To so much of the charge of said justice as instructed the jury that if certain payments to the appellant constituted an advancement, 'It was wiped out by the execution of the will and codicil as it stands and to that ruling I note the exception of the appellees,' as appears on page 1487 of said transcript."

We think this exception should be sustained, in accordance with our extended discussion above of the question here involved, showing that this instruction as a matter of law was erroneous.

Exceptions Nos. 18–22, inclusive, relate to the refusal of a certain request to charge the jury on behalf of the appellees,

and to certain portions of the charge as given; we have carefully examined them all and find nothing therein which constitutes prejudicial error, or which requires discussion. Ex. Nos. 18–22, inclusive, are all overruled.

Exception 23 is based upon the denial of the appellees' motion for a new trial. Inasmuch as we have found that the verdict of the jury was warranted by the evidence both as to that portion which they found by direction of the court, and as to that portion which they found without special direction, except in that certain particular wherein they were misled by the instruction of the court that the will and codicil wiped out the advancements, there was nothing upon which the justice of the Superior Court was warranted in granting a new trial; this exception is overruled.

All of the other exceptions taken by the appellees were expressly waived.

Upon full and careful consideration we are of the opinion that the appellant, Mrs. Hayes, was properly chargeable with the principal sum of $20,500 with interest at 4 per cent. per annum upon the several items making up that sum reckoned from the date of payment of each item; that in view of the fact that her share of the residue is more than sufficient to repay this sum with interest as aforesaid, she was properly chargeable with the whole thereof and bound to account with the estate therefor; that the charging of these sums with interest to her in the executors' account as loans rather than as advancements was a mere formal error in the use of language, but did not affect the correctness of the account; that she is not chargeable with the sum of $250 which was loaned to her husband by the check dated August 21, 1907, since that was clearly a loan and not an advancement to her, and the jury have found that she was not indebted for any loan, as heretofore fully set forth; that the sum of $250 must be treated as a loan to Mr. Hayes, he having acknowledged in open court that he owed it, and that it was not a debt for which Mrs. Hayes was accountable. Since the case involves only the question of accountability for the advancements as

to the amount of which there is no dispute, the case does not require a new trial (See *J. L. Mott Iron Works* v. *John A. Arnold,* 35 R. I. 456, 472); in our opinion all that is necessary is the entry of an order to be transmitted to the Superior Court, in accordance with this opinion, setting forth in what respect the account of the executors should be restated as to charging Mrs. Hayes with advancements instead of loans, and as to striking out the item of $250 which as we have seen is to be regarded as a loan, not to her, but to her husband, Mr. J. Noble Hayes.

The appellant may show cause, if any she has why this order should not be made, on the 20th day of March, 1916, at 10 o'clock in the forenoon.

*Mumford, Huddy & Emerson,* for appellant.

*Charles C. Mumford, J. Noble Hayes,* of counsel.

*Green, Hinckley & Allen,* for appellees.

*Theodore Francis Green, Frederick W. Tillinghast, Charles E. Mannierre,* of counsel.